UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHRISTOPHER LACCINOLE, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 13-716ML |
| | : | |
| TWIN OAKS SOFTWARE | : | |
| DEVELOPMENT, INC., | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

      Lured by the prospect of statutory damages, Plaintiff Christopher Laccinole, proceeding

*pro se*, sued Twin Oaks Software Development, Inc. ("Twin Oaks"), the dues processing firm

used by his fitness club, claiming that he was victimized by a "Friendly Reminder" letter

informing him that the debit card he had tendered to pay his monthly membership dues had

declined a charge. Plaintiff asserts that this letter violates both the federal Fair Debt Collection

Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the Rhode Island Deceptive Trade

Practices Act ("RI-DTPA"), R.I. Gen. Laws § 6-13.1-1, *et seq.*, because Twin Oaks had not

registered as a "debt collector" under the Rhode Island Fair Debt Collection Practices Act ("RI-

FDCPA"), R.I. Gen. Laws § 19-14.9-12.[1]

      Relying on his own Affidavit, Mr. Laccinole asks this Court to enter summary judgment

in his favor and to award him statutory damages, actual damages,[2] attorney's fees, costs and

---

[1] The Complaint also alleged a violation of the Connecticut Banking Law. Conn. Gen. Stat. § 36a-805(a)(13). At the hearing, Mr. Laccinole withdrew this claim because Connecticut law is not applicable to this case.

[2] Conclusory allegations in Mr. Laccinole's Complaint and his motion for summary judgment claim that he suffered actual damages caused by emotional distress. ECF No. 1 ¶¶ 69, 73, 78, 82; ECF No. 7 at 2. His written submissions are devoid of facts suggesting actual damages, including emotional damages, and his Affidavit presents no evidence of any actual damages. When questioned by this Court at the hearing, he was unable to articulate any way in which he had experienced any actual damages. Accordingly, the only potential damages are the statutory damages

punitive damages of $75,000. He also seeks an injunction barring Twin Oaks from doing business in Rhode Island and a referral of it for prosecution by the Rhode Island Attorney General and enforcement proceedings by the Federal Trade Commission and the Consumer Financial Protection Bureau. Twin Oaks, the membership dues processor, countered with a motion for judgment on the pleadings, but also submitted two Affidavits – one from Mary Jo Laliberte, its Executive Vice President, and one from Melissa Whalen, the General Manager of the fitness club – which flesh out the contractual relationships between Twin Oaks and the club and between the club and Mr. Laccinole. These Affidavits inject the critical facts that Mr. Laccinole's membership dues were consistently paid directly to his fitness club, which disclosed that they were being processed by a third party, and that his dues were not in default, either when Twin Oaks began processing them or at the time of the letter Plaintiff found so offensive. Mr. Laccinole moved to strike the first iteration of the Laliberte Affidavit because of a slew of technical deficits;[3] however, when Twin Oaks filed the curative second Laliberte Affidavit and the Whalen Affidavit, which collectively addressed all of his plaints, he acquiesced to the admissibility of both. All of the pending motions – Mr. Laccinole's motions for summary judgment and to strike the Affidavits and Twin Oaks' motion for judgment on the pleadings – have been referred to me for report and recommendation.

Because I find that the Laliberte and Whalen Affidavits contain admissible, relevant evidence that should be considered by this Court, and in light of Mr. Laccinole's acknowledgment that they are admissible, I recommend that the motion to strike be denied.

---

provided for by FDCPA and RI-DTPA. 15 U.S.C. § 1692k(a)(2)(A) ($1000); R.I. Gen. Laws § 6-13.1-5.2(a) ($200).

[3] The motion to strike also sought to delete from the record the documents authenticated by the Laliberte Affidavit – the Membership Agreement Mr. Laccinole had signed and the two processing agreements between Twin Oaks and his fitness club. Mr. Laccinole has not challenged the authenticity of any of them.

Based on my determination that this evidence should be considered, at the request of Mr. Laccinole, ECF No. 27 at 2, with the consent of Twin Oaks and with notice to both parties pursuant to Fed. R. Civ. P. 12(d),[4] I have converted Twin Oaks' motion for judgment on the pleadings to one for summary judgment. See id.

My conclusions may be briefly summarized. When the applicable law is applied to the undisputed facts, including the facts in the Whalen and Laliberte Affidavits, which Mr. Laccinole concedes are undisputed,[5] it is clear that Twin Oaks is not a debt collector within the meaning of either FDCPA or RI-FDCPA, so that it was not required to register as a debt collector under RI-FDCPA. The undisputed facts further establish that neither Twin Oaks' processing of his membership dues nor the challenged communications it sent to him caused him any injury; none of its actions were deceptive, harassing, abusive or violative of state or federal law. Finally, Mr. Laccinole's late breaking request for leave to amend his Complaint to assert a new theory – deceptive collection activity by a creditor using other names – should be denied as futile. Accordingly, I recommend that Twin Oaks' motion be granted and Mr. Laccinole's motion be denied, without leave to amend his Complaint. The analysis follows.

---

[4] At the hearing, both parties confirmed that they have already submitted all material that would be pertinent, should the Court determine that the motion ought to be treated as one for summary judgment. Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (if court chooses to consider supplemental materials, all parties must be given reasonable opportunity to present material pertinent to motion).

[5] In light of Mr. Laccinole's tendency to shift position as the wind changes, I independently examined the material facts to ascertain whether Mr. Laccinole might later withdraw this concession, arguing that he needs discovery. I confirmed that substantially all of the facts that are material to my recommendation are matters as to which Mr. Laccinole had first-hand knowledge, including the content of the Membership Agreement he signed, the status of his account at the inception of his membership in the fitness club and thereafter and the content of the communications he exchanged with Twin Oaks. This is not a circumstance where the delay contemplated by Fed. R. Civ. P. 56(d) might be appropriate.

# I.     FACTUAL BACKGROUND[6]

On July 31, 2005, South County Holdings, Inc. ("South County"), the owner and operator of the South Kingstown, Rhode Island, fitness club then operating under the fictitious name, World Gym of South County, entered into a Software Licensing and Dues Processing Agreement ("2005 Dues Processing Agreement") with Twin Oaks, a software company based in Connecticut.  Whalen Aff. ¶¶ 2, 5-6.  Twin Oaks provides software licensing, management reporting and recurring payment processing services for its customers' membership accounts, as well as additional services, such as reminder notices for members whose periodic payment has been declined, but is not in default, and collection services.  Laliberte Aff. II ¶¶ 6, 7, Ex. A; Whalen Aff. ¶ 6, Ex. A.  The 2005 Dues Processing Agreement required Twin Oaks to process the electronic checking and savings debit and credit card payments made to South County by its members.  Laliberte Aff. II ¶ 7, Ex. A (¶ 1); Whalen Aff. ¶ 6, Ex. A (¶ 1).  If a payment was declined by an authorized card, the 2005 Dues Processing Agreement required Twin Oaks to send up to five letters, each of which would include an invoice for the dues and a $20 service fee, as well as to "attempt to contact members by phone, using respectful and ethical scripts, to obtain payment and new billing information if possible."  Id.  If a dues payment remained uncollected for sixty days, it was transferred to collection.  Laliberte Aff. II ¶ 7, Ex. A (¶ 2(b)).

On December 22, 2008, Christopher Laccinole signed a Membership Agreement with South County, allowing him to use the equipment and facilities at what was then known as World Gym of South County.  Whalen Aff. ¶ 7, Ex. B.  In the Membership Agreement, Mr. Laccinole authorized "World Gym South County" to charge his bank account through his debit MasterCard for his membership dues, then set at $46, on the fifteenth of each month.  Id.  The

---

[6] Except where otherwise indicated, these are the undisputed facts derived from the Laccinole Affidavit (Laccinole Aff. ¶ __), the second Laliberte Affidavit (Laliberte Aff. II ¶ __) and the Whalen Affidavit (Whalen Aff. ¶ __).

Membership Agreement expressly permitted South County to change the amount of the monthly dues without procuring the member's signature on a new agreement; as a result, at the time of the events that are the subject of this litigation, the monthly dues had been reduced to $39 per month. Id. ¶¶ 7, 8, Ex. B. Directly above Mr. Laccinole's signature on the first page, the Membership Agreement notified him that, "[o]ur dues are processed by an outside billing company. A $20 service charge will be added to all returned items." Id. ¶ 7, Ex. B. The Membership Agreement provided for a thirty-day grace period before dues would become delinquent:

> All monthly dues obligations are due and payable as specified in the payment schedules. If dues become thirty (30) days delinquent, use of World Gym of South County facilities will be suspended and membership will be automatically terminated, the down payment shall be forfeited and is nonrefundable.

Id.

On January 15, 2009, Twin Oaks began processing Mr. Laccinole's member account with South County. Laliberte Aff. II ¶ 10; Whalen Aff. ¶ 9. It is undisputed that his account was not in default in December 2008 when he became a member of the fitness club, nor was he in default when Twin Oaks began to process his payments to World Gym of South County in January 2009. Id. Until February 2011, in accordance with Mr. Laccinole's authorization in the Membership Agreement and pursuant to the 2005 Dues Processing Agreement, Mr. Laccinole's bank account was charged through his debit MasterCard for his monthly membership dues paid to World Gym of South County. ECF No. 34-1 at 1-3 (relevant bank account entries).

On February 18, 2011, South County changed the trade name of its fitness club to Luxe Fitness. Laliberte Aff. II ¶ 8; Whalen Aff. ¶10, Ex. C (attaching South County's "Fictitious Business Name Statement" filed with Rhode Island Secretary of State). As a result, South County and Twin Oaks executed a new Software Licensing and Dues Processing Agreement and

Member Services and Collection Agreement[7] containing updated terms and conditions, and reflecting the name change (collectively, "2011 Dues Processing Agreement"). As relevant to this litigation, the 2011 Dues Processing Agreement is essentially the same as the 2005 Dues Processing Agreement. Whalen Aff. ¶ 10. After South County notified its customers of its name change to Luxe Fitness, Mr. Laccinole's bank account continued to be charged through his debit MasterCard for monthly membership dues paid to Luxe Fitness. ECF No. 34-1 at 4 (relevant bank account entries); Whalen Aff. ¶ 11.

On May 15, 2013, Mr. Laccinole's MasterCard declined his $39 monthly dues payment to Luxe Fitness. On May 23, only a week later and well inside the thirty-day grace period, Twin Oaks sent him a letter headed "FRIENDLY REMINDER" ("Friendly Reminder Letter"). The first sentence clearly and accurately informed Mr. Laccinole that "[Twin Oaks] processes your LUXE FITNESS membership dues." Signed by "Twin Oaks Member Services Staff," the letter cited the amount due as $59 ($39 monthly dues plus the $20 service fee) and stated that Twin Oaks "is eager to help you to keep your membership in good standing." ECF No. 1-3. The first page of the letter stated, "This is an attempt to collect a debt. Any information obtained will be used for that purpose;" the second page provided a detailed statement of Mr. Laccinole's rights to dispute and for verification of the debt. Id. The letter informed Mr. Laccinole that his MasterCard had declined the monthly membership dues and that he had the right to dispute the debt; nothing about the letter is deceptive, nor did it threaten any adverse action.

Within two weeks of the Friendly Reminder Letter, Mr. Laccinole was preparing to sue Twin Oaks, contacting the Rhode Island Department of Business Regulation to confirm that

---

[7] By contrast with the 2005 Dues Processing Agreement, which was a single document, in 2011, the Dues Processing Agreement and the Member Services Agreement were executed as two separate agreements. Whalen Aff. ¶¶ 6, 10, Exs. A, D.

Twin Oaks was not registered as a debt collector.  Laccinole Aff. ¶ 13.  On June 6, 2013, Mr. Laccinole sent two letters to Twin Oaks, one stating, "I dispute this debt.  Please validate," while the other enclosed a draft complaint to be filed in federal court and asked if Twin Oaks was interested in pre-suit settlement negotiations.  Id., Exs. H-I.  On the same day that Plaintiff sent his letter threatening litigation (June 6, 2013), and still inside the thirty-day grace period, Twin Oaks sent a second letter to Mr. Laccinole, headed "REMINDER," but otherwise substantially similar to the first letter ("Reminder Letter").  ECF No. 27-2 at 7.

Twin Oaks did not respond to either Mr. Laccinole's dispute/validation letter or his litigation threat letter; it explains in its Answer that it did not respond because "Luxe Fitness [South County] reported that plaintiff had paid the outstanding bill in full."  ECF No. 4. ¶ 65.  Despite his assertion in the letter to Twin Oaks that the amount he owed to South County was in "dispute," at the hearing, Mr. Laccinole conceded that he continues to enjoy the use of the equipment and facilities at Luxe Fitness and continues to pay his monthly dues to South County.[8]

On October 25, 2013, Mr. Laccinole filed this suit.  His Complaint alleges that Twin Oaks is a "'Debt Collector' as defined by the FDCPA," which Twin Oaks denies,[9] and had failed to register as required by RI-FDCPA, which Twin Oaks admits.  ECF No. 1 ¶¶ 37, 53-54.  In furtherance of his suit, Mr. Laccinole procured letters from the Federal Trade Commission, the Rhode Island Attorney General and the Rhode Department of Business Regulation establishing

---

[8] At the hearing, Mr. Laccinole disingenuously asserted that he was continuing to be dunned for the debt at issue in this case.  When questioned by the Court, he conceded that this was a reference to his ongoing Luxe Fitness membership – put differently, every month Mr. Laccinole receives the benefits of membership and every month he pays for those benefits.  These membership dues are new obligations, incurred each month as he continues to belong to Luxe Fitness; the processing of these new payments is not collection of the $59 debt at issue in this case.

[9] Twin Oaks responded to this allegation by pleading, "[t]he paragraph sets forth propositions of law that require no response."  ECF No. 1 ¶ 37; ECF No. 4 ¶ 37.  Mr. Laccinole initially attempted to argue that this Answer constitutes an admission that Twin Oaks is a debt collector.  This argument ignores Twin Oaks' denial of the related factual allegations to the same effect.  ECF No. 1 ¶¶ 35-36; ECF No. 4 ¶¶ 35-36.  I do not adopt Mr. Laccinole's interpretation of the pleadings.  See 5 Charles Alan Wright et al., Federal Practice and Procedure § 1279 (3d ed.) (failure to deny conclusions of law does not constitute admission of those conclusions).

that none has exercised its regulatory or prosecutorial discretion to bring a criminal or regulatory action against a debt collector based solely on the failure to register; these letters were attached to his Affidavit. Laccinole Aff., Exs. J-L. He presents himself to this Court as a "private attorney general," a sophisticated consumer tasked by Congress to aid his less-sophisticated counterparts by bringing civil actions to police FDCPA violations that the regulators and agencies tasked with FDCPA (and RI-FDCPA) compliance decline to address. See Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 91 (2d Cir. 2008).

Mr. Laccinole's opening brief hyperbolically asserts that Twin Oaks "has acted in bad faith and presents an obstinate passion to avoid compliance with statutes in this State." ECF No. 7 at 17. Nevertheless, at the hearing, he appeared to concede that much of what he had pled in his Complaint is without merit. Instead, he pressed for leave to amend, to add a new theory of deception in violation of FDCPA, 15 U.S.C. §§ 1692a(6), 1692e, 1692g and 1692j – he now contends that he has been deceived since 2009 because he was making his payments first to World Gym and later to Luxe Fitness, at the same time that those payments were being processed by Twin Oaks. In light of Plaintiff's *pro se* status,[10] and in the interests of efficiency, I consider the merits of Mr. Laccinole's new theory, along with the rest of his claims. See Kennedy v. United Collection Bureau, Inc., CIV. No. 09-cv-05480 DRD-MAS, 2010 WL 445735, *4-5 (D.N.J. Feb. 3, 2010) (court considers *pro se* FDCPA plaintiff's theoretical facts on merits and concludes they would not state claim if pled, so amendment would be futile and complaint should be dismissed without leave to amend).

---

[10] Plaintiff's filings in this Court exude a degree of sophistication many lawyers would envy. Nevertheless, I accept his *pro se* status at face value and afford him the liberality appropriate in these circumstances. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (documents filed *pro se* are "to be liberally construed") (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

II.    **APPLICABLE LAW**

A.    **Standard of Review**

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the pleadings, discovery, disclosure materials and affidavits show there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009); Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006). A fact is material only if it possesses the capacity to sway the outcome; a dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010); Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000). This Court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000). However, the non-moving party "must present definite, competent evidence to rebut the motion." Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000) (internal citations omitted). Summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations or rank speculation. PHL Variable Ins. Co. v. P. Bowie 2008 Irrevocable Trust, 889 F. Supp. 2d 275, 279 (D.R.I. 2012) (quoting Ingram v. Brink's, Inc., 414 F.3d 222, 228–29 (1st Cir. 2005)).

When evaluating cross-motions for summary judgment, the standard does not change; "[courts] view each motion separately and draw all reasonable inferences in favor of the respective non-moving party." Bonneau v. Plumbers & Pipefitters Local Union 51 Pension Trust Fund ex rel. Bolton, 736 F.3d 33, 36 (1st Cir. 2013) (quoting Roman Catholic Bishop of Springfield v. City of Springfield, 724 F.3d 78, 89 (1st Cir. 2013)). Cross-motions "simply

require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." T.G. Plastics Trading Co. Inc. v. Toray Plastics (Am.), Inc., C.A. No. 09-336/M, 2013 WL 3974105, at *3 (D.R.I. Aug. 2, 2013) (quoting Adria Int'l Grp., Inc. v. Ferre Dev., Inc., 241 F.3d 103, 107 (1st Cir. 2001)). This Court must view each motion separately in the light most favorable to the non-moving party, draw all reasonable inferences in that party's favor and determine, for each side, whether a judgment may be entered in accordance with the Rule 56 standard. Bienkowski v. Ne. Univ., 285 F.3d 138, 140 (1st Cir. 2002); Wells Fargo Bank, N.A. v. Wasserman, 893 F. Supp. 2d 310, 315 (D.R.I. 2012).

## B. **Federal Fair Debt Collections Practices Act**

FDCPA was adopted in 1977 to protect consumers from "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a), *et seq.* Among its enforcement tools, Congress created "a private cause of action for victims of oppressive or offensive collection agency behavior." Chiang v. Verizon New England Inc., 595 F.3d 26, 41 (1st Cir. 2010) (internal quotation marks omitted). FDCPA prohibits harassment or abuse, false or misleading representations and unfair practices by debt collectors. 15 U.S.C. § 1692d-f. Section 1692e(5) specifically prohibits a debt collector from threatening to take any action that cannot legally be taken or that is not intended to be taken. FDCPA also prohibits a debt collector from continuing to collect a debt if the consumer notifies the debt collector in writing that the debt is disputed until the debt collector has verified the debt and sent a copy of the verifying information to the consumer. 15 U.S.C. § 1692g(b).

The definition of who is a "debt collector" and therefore subject to these proscriptions is set out in 15 U.S.C. § 1692a(6); the definition specifically excludes certain categories of "persons." 15 U.S.C. § 1692a(6). The exclusion that is principally pertinent here applies to a

"person" engaged in collection or attempting to collect to the extent such activity "concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Pursuant to this exemption, collection activity by a servicer that obtained the right to collect at a time when the debt was not in default does not constitute debt collection under FDCPA. Carter v. AMC, LLC, 645 F.3d 840, 843-44 (7th Cir. 2011) (debt is "obtained" for purposes of FDCPA exemption when right to engage in collection activity is obtained; servicers who "obtain" right to collect are exempt as long as debt not in default at commencement of servicing); VanHauen v. Am. Home Mortg. Servicing, Inc., No. 4:11-CV-461, 2012 WL 874330, at *5-6 (E.D. Tex. Feb. 17, 2012) (servicer of loan that began servicing prior to default is not debt collector); Crepeau v. JP Morgan Chase Bank, N.A., Civil No. 11-cv-125-JL, 2011 WL 6937508, at *5 (D.N.H. Dec. 5, 2011) (FDCPA applies only to collection by person who obtained debt after default); Pulawa v. Fed. Recovery Servs., Inc., No. Civ. 05-00159 ACK/KS, 2006 WL 1153745, at *6-7, 10 (D. Haw. May 1, 2006) (because defendant began to service fitness center membership account when it was not in default, defendant's motion for summary judgment granted and plaintiff's cross motion denied).

A creditor collecting its own debt in its own name enjoys a separate exemption from the definition of debt collector under FDCPA. 15 U.S.C. § 1692a(6)(F)(ii). This exemption is lost when the creditor opts to collect under a different name, causing the least sophisticated consumer to believe that a third party has taken over collecting the debt. 15 U.S.C. § 1692a(6); see Catencamp v. Cendant Timeshare Resort Grp.-Consumer Fin., Inc., 471 F.3d 780, 782 (7th Cir. 2006) (when creditor deceptively trumpets itself as debt collector under a different name, it is subject to obligations imposed on debt collectors by FDCPA).

Section 1692a(6)'s exemption for creditors collecting their own debts is complemented by 15 U.S.C. § 1692j, which creates a private right of action against any "person" who creates a form that induces the consumer to believe (falsely) that someone other than the creditor is collecting the debt. 15 U.S.C. § 1692j(2); <u>see</u> <u>Gutierrez v. AT&T Broadband, LLC</u>, 382 F.3d 725, 734–35 (7th Cir. 2004) (§ 1692j addresses use by creditor of third party's letterhead in order to "'give[ ] the delinquency letters added intimidation value, as it suggests that a collection agency or some other party is now on the debtor's back.'") (quoting <u>Nielsen v. Dickerson</u>, 307 F.3d 623, 633 (7th Cir. 2002)); <u>Davis v. Lyons, Doughty & Veldhuis, P.A.</u>, 855 F. Supp. 2d 279, 286 (D. Del. 2012) (no "flat rating" violation under § 1692j where defendant did not sell creditor dunning letter with letterhead of collection agency for creditor to use to pressure debtors); <u>Passa v. City of Columbus</u>, 748 F. Supp. 2d 804, 813 (S.D. Ohio 2010) (even least sophisticated-consumer would not be misled by letter to believe City was attempting to collect debt of another). Liability under 15 U.S.C. § 1692j is not limited to persons who are debt collectors as defined in FDCPA. 15 U.S.C. § 1692j(2).

### C. <u>Rhode Island Fair Debt Collections Practices Act</u>

RI-FDCPA was passed in 2007. R.I. Gen. Laws § 19-14.9-3, *et seq*. It defines and proscribes permissible and impermissible conduct by debt collectors, and permits consumers to recover statutory damages and actual damages arising from the failure to comply with those requirements. R.I. Gen. Laws §§ 19-14.9-4 to -11; 19-14.9-13. It also creates a requirement that any person engaged in the "business of a debt collector" must first register with the Rhode Island Department of Business Regulation and pay a $200 registration fee; unlike the proscribed conduct laid out in sections 4 through 11, failure to register does not give rise to a private right of action. R.I. Gen. Laws § 19-14.9-12; 19-14.9-13. Rather, failure to register is a misdemeanor,

which exposes the scofflaw to fines up to $2000 or imprisonment for not more than a year, or both. R.I. Gen. Laws § 19-14.9-13.

Like the federal FDCPA, the Rhode Island version excludes from the definition of a "debt collector" a person who collects or attempts to collect a debt owed or due to the extent that the activity concerns a debt not in default at the time it was "obtained" by the person. R.I. Gen. Laws § 19-14.9-3(5)(f)(3). Thus, a person who is servicing or processing a debt that is owed, but not in default, is not engaged in the "business of a debt collector" and is not subject to the registration requirement. A different exclusion (R.I. Gen. Laws § 19-14.9-3(5)(f)(2)) applies to a creditor collecting his or its own debt; as in FDCPA, that exclusion lapses if the originator of the debt uses a name other than his or its own "which would indicate that a third person is collecting or attempting to collect the debt." R.I. Gen. Laws § 19-14.9-3(5). RI-FDCPA specifically prohibits a debt collector from using a name other than the true name of the debt collector's business. R.I. Gen. Laws § 19-14.9-7(n).

### D. Rhode Island Deceptive Trade Practices Act

RI-DTPA creates a private right of action for consumers who are injured by unfair methods of competition and unfair or deceptive acts or practices. R.I. Gen. Laws § 6-13-1-1, *et seq*. Recovery may be had only for "ascertainable losses of money or property, real or personal," caused by a deceptive act or practice in connection with the purchase or lease of goods or services primarily for personal use. R.I. Gen. Laws § 6-13.1-5.2. If deceptive or unfair conduct has caused "ascertainable losses," the claimant may recover actual damages or statutory damages of $200, whichever is greater, as well as punitive damages, attorney's fees and costs in the discretion of the court. R.I. Gen. Laws § 6-13.1-5.2(a, d). Punitive damages are limited to circumstances where there is "evidence of such willfulness, recklessness or wickedness on the

13

part of the party at fault, as amount[s] to criminality, which for the good of society and warning of the individual, ought to be punished." In re Keach, 204 B.R. 851 (Bankr. D.R.I. 1996) (quoting Morin v. Aetna Cas. & Sur. Co., 478 A.2d 964, 967 (R.I. 1984)) (alteration in original).

RI-DTPA exempts actions regulated or monitored under the laws administered by the Rhode Island Department of Business Regulation or any other state or federal regulatory body. R.I. Gen. Laws § 6-13.1-4; see Kondracky v. Crystal Restoration, Inc., 791 A.2d 482 (R.I. 2002); State v. Piedmont Funding Corp., 382 A.2d 819, 822 (R.I. 1978). This exemption applies if the party claiming it demonstrates that the general activities complained of are subject to monitoring or regulation, unless the party seeking to enforce the RI-DTPA can establish that "the specific acts at issue" are not covered by the exemption. Lynch v. Conley, 853 A.2d 1212, 1214 (R.I. 2004) (attorney general may not investigate allegedly-deceptive lead hazard disclosure under RI-DTPA because that practice is regulated and monitored by Rhode Island Department of Health); Piedmont Funding Corp., 382 A.2d at 822 (exemption from RI-DTPA established by evidence that sale of insurance and mutual funds regulated and monitored by Rhode Island Insurance Commissioner and SEC and that failure to comply will result in revocation of license to sell).

No Rhode Island decision was found that addresses whether the requirement that debt collectors must register with the Department of Business Regulation is sufficient regulation or regulatory monitoring to exempt deceptive actions taken by debt collectors from liability under RI-DTPA; however, at least one decision by this Court would suggest that it is not sufficient. Barreiro v. Jef Booth, P.C., C.A. 08-59ML, 2009 WL 982412, at *2-3 (D.R.I. Apr. 10, 2009). In Barreiro, this Court found that deceptive conduct in violation of FDCPA could also give rise to a claim under RI-DTPA. The RI-DTPA claim was dismissed, not because of an exemption based

on regulation pursuant to RI-FDCPA, but rather because the plaintiff had failed to allege "ascertainable loss of money or property, real or personal . . . ." <u>Id.</u>, at \*3.

## III.   ANALYSIS

Plaintiff's *pro se* Complaint, supplemented by his written and oral submissions in connection with these motions, presents a moving target.  His Complaint seemed to challenge various actions or omissions by Twin Oaks, including Twin Oaks' collection of a $20 service fee and the failure of Twin Oaks to respond to his letters disputing the debt and offering to enter into settlement negotiations.  However, his brief in support of his motion for summary judgment represents that he is no longer pursuing collateral theories because "[t]he gravamen of this case is that Twin Oaks failed to register with the Rhode Island DBR before attempting to collect money from the Plaintiff."  ECF No. 27 at 5; <u>see also id.</u> at 10 ("Plaintiff never said that Twin Oaks violated FDCPA because it failed to respond to his correspondence.").[11]  He shifted to focus exclusively on the failure of Twin Oaks to register as a debt collector in the State of Rhode Island as required by R.I. Gen. Laws § 19-14.9-12, which he alleges is criminal conduct so tainted that Twin Oaks' contact with him must be deemed abusive, harassing, false, deceptive, unfair and unconscionable.  Further, because an unregistered debt collector is barred from taking any action to collect a debt, Mr. Laccinole argues that Twin Oaks also violated FDCPA, which prohibits a debt collector from threatening to take any action that it cannot legally take.  15

---

[11] Mr. Laccinole's decision not to pursue these theories is sage.  The claim based on the $20 service fee is meritless because it was based on a Connecticut statute not applicable in Rhode Island, Conn. Gen. Stat. § 36a-805, and because FDCPA is clear that such a service fee may be charged when it is expressly authorized by the Membership Agreement, as it was here.  15 U.S.C. § 1692f(1) (fees and incidental expenses may be collected if expressly authorized by agreement creating debt).  Similarly, a claim based on the failure to respond to the validation/dispute letter or the settlement demand letter would fail as a matter of law because both FDCPA and RI-FDCPA prohibit further communication with a debtor once a dispute/validation letter has been sent, unless and until the debt is verified.  15 U.S.C. § 1692g(b); R.I. Gen. Laws § 19-14.9-9(2).

U.S.C. § 1692e(5); see Fiorenzano v. LVNV Funding, LLC, C.A. No. 11-178M, 2012 WL 2562415, at *4 (D.R.I. June 29, 2012) (failure to register as debt collector under state law might violate FDCPA).

Most recently, Mr. Laccinole switched his theory again when faced with the undisputed facts in the Affidavits presented by Twin Oaks. In his Reply to Defendant's Objection of Motion to Strike, and at the hearing, he announced his intent to seek to amend his Complaint to allege that he was deceived because his payments for his fitness club membership were paid directly to World Gym South County and then Luxe Fitness, at the same time that, as disclosed in his Membership Agreement, the payments were being processed by Twin Oaks. Mr. Laccinole's summary of his new theory is that, "[Twin Oaks] deceived and confused Plaintiff by collecting using other names since 2009," in violation of 15 U.S.C. § 1692(3) (prohibits debt collectors from making false or misleading representations); 15 U.S.C. § 16926g (governs debt collector's activities in connection with dispute of debt); and 15 U.S.C. § 1692j (prohibits creditor from creating form that causes consumer to believe a third party is collecting debt, when that is false). ECF No. 34 at 1.

Except for 15 U.S.C. § 1692j, which I will address separately, pivotal to every one of these claims is that Twin Oaks was a "debt collector" as defined in both FDCPA and RI-FDCPA. Both Acts exempt from the definition of debt collector any collection or attempt to collect any debt owed to the extent that the collection activity "concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii); R.I. Gen. Laws § 19-14.9-3(5)(f)(2); see Pulawa, 2006 WL 1153745, at *6-7 (because fitness center membership debt not in default when "obtained" for servicing, defendant not a "debt collector").

The law is settled that Twin Oaks "obtained" Mr. Laccinole's debt when it commenced

processing in January 2009 pursuant to the terms of the 2005 Dues Processing Agreement, which

gave it the right not only to process, but also to send reminder notices and to communicate

directly with members about periodic payments that had been declined. Carter, 645 F.3d at 843-

44 (debt is "obtained" by a debt servicer for purposes of FDCPA exemption when it obtains right

to engage in collection activity). Because it is undisputed that the amount owed by Mr.

Laccinole for his membership dues was not in default at the time Twin Oaks "obtained" his

account for processing, Twin Oaks was not a debt collector under either FDCPA or RI-FDCPA

at any time conceivably relevant to this litigation. See, e.g., VanHauen, 2012 WL 874330, at *5-

6 (servicer of loan that began servicing prior to default is not a debt collector); Crepeau, 2011

WL 6937508, at *5 (FDCPA applies only to person attempting to collect debts who obtained the

debt after it was in default). Even if it could be argued that Twin Oaks did not "obtain" the debt

until Mr. Laccinole's MasterCard declined the charge, because both the Friendly Reminder and

the Reminder Letters were written during the grace period, Mr. Laccinole was still not "in

default" under either FDCPA or RI-FDCPA when Twin Oaks sent the communications he

brands as criminal and unconscionable, ECF No. 7 at 12. See Alamo v. ABC Fin. Servs., Inc.,

Civil Action No. 09-5686, 2011 WL 221766, at *5 (E.D. Pa. Jan. 20, 2011) (debt for gym

membership dues not in default during grace period).

Because the undisputed evidence establishes that Twin Oaks was not a debt collector at

any time relevant to this case, it was not subject to the Rhode Island registration requirement or

to any of the other mandates imposed by FDCPA or RI-FDCPA on debt collectors.[12] See

---

[12] In their briefs, the parties hotly disputed whether a violation of the RI-FDCPA registration requirement, which
does not support a private right of action, can violate FDCPA and give rise to a federal private right of action under
15 U.S.C. § 1692k (civil liability). In an argument unsupported by citation to any authority, Twin Oaks raised the
specter of a Tenth Amendment violation if this Court should conclude that it does. These issues are mooted by the

<u>Kassner v. Chase Home Fin., LLC</u>, Civil Action No. 11-10643-RWZ, 2012 WL 260392, at *9

(D. Mass. Jan 27, 2012) (where debt not in default, failure to register under state law is not a

violation of FDCPA); <u>Prince v. NCO Fin. Servs., Inc.</u>, 346 F. Supp. 2d 744, 751 (E.D. Pa. 2004)

(because account servicing agent not engaged in debt collection, summary judgment in favor of

servicer).  Accordingly, all of the claims Mr. Laccinole packed into his Complaint fail as a

matter of law.

Mr. Laccinole pushes back on this conclusion with his argument that the statement on the

face of the Friendly Reminder and Reminder Letters that "this is an attempt to collect a debt"[13]

converts Twin Oaks into a debt collector despite the exemption in 15 U.S.C. § 1692a(6)(F)(iii).

This self-identification argument has been repeatedly rejected by every court that has considered

it.  For example, in <u>Nwoke v. Countrywide Home Loans, Inc.</u>, 251 F. App'x 363, 365 (7th Cir.

2007), the Court noted that the statement on a collection communication that "Countrywide is a

debt collector" "has nothing to do with whether Countrywide is a 'debt collector' for purposes of

the FDCPA."  <u>Id.</u>  While the undisputed facts in <u>Nwoke</u> demonstrated that Countrywide

sometimes acted as a debt collector, it was not acting as a debt collector in the instance at issue,

and the statement in the letter could not alter that reality.  <u>Id.</u>; <u>see</u> <u>Prickett v. BAC Home Loans</u>,

946 F. Supp. 2d 1236, 1248-49 (N.D. Ala. 2013) (loan servicer that took responsibility for debt

conversion of Twin Oaks' motion for judgment on the pleadings to a motion for summary judgment, which permits this Court to consider the undisputed facts compelling the conclusion that Twin Oaks is not a debt collector and had no duty to register.  Accordingly, I decline the parties' invitation to address the viability of the holding in <u>Fiorenzano</u>, 2012 WL 2562415, that the failure of a debt collector to register under RI-FDCPA could violate FDCPA, mindful of the intra-court comity that augers against divergent rulings within a district without compelling reasons to do so.  <u>Place v. California Webbing Indus., Inc.</u>, 249 F. Supp. 2d 157, 162 (D.R.I. 2003).  In any event, even if noncompliance with state-law registration rules can violate FDCPA, a letter that is a mere reminder, even if sent by a debt collector that has failed to register, would likely be found insufficient for a FDPCA violation as a matter of law.  <u>Grant-Fletcher v. Brachfeld Law Grp., PC</u>, Civil No. WMN-11-2072, 2012 WL 2523094, at *6 (D. Md. June 28, 2012) (complaint based on letter that did not threaten legal action and would be viewed by least sophisticated debtor as a reminder and not a threat fails to state a claim based on sender's failure to register).

[13] This is the language of the notice as mandated by 15 U.S.C. § 1692e(11).  <u>See</u> <u>Carroll v. Wolpoff & Abramson</u>, 53 F.3d 626, 627 (4th Cir. 1995) ("debt collection notification must be included in <u>all</u> correspondence").

when it was not in default is not debt collector; letter that describes it as debt collector does not alter FDCPA statutory definition); <u>Newman v. Trott & Trott, P.C.</u>, 889 F. Supp. 2d 948, 959-60 (E.D. Mich. 2012) (letter with prominent notice that "this firm is a debt collector" legally insufficient to convert enforcement of security interest into debt collection); <u>VanHauen</u>, 2012 WL 874330, at *5-6 (loan servicer is not debt collector despite debt collection disclaimer in letter). Rather, the inclusion of a collection disclaimer statement is seen by courts as a well-accepted solution to the Hobson's choice posed by the unsettled law of FDCPA. <u>Fouche v. Shaprio & Massey L.L.P.</u>, 575 F. Supp. 2d 776, 788 & n.6 (S.D. Miss. 2008) (in communications that do not amount to debt collecting, reasonable to "err on the side of caution" and include FDCPA disclaimers).

Immediately prior to and at the hearing on these motions, Mr. Laccinole tacked in an entirely different direction, articulating a newly-concocted argument arising from a completely different FDCPA exemption. His new focus is on FDCPA language that exempts from the definition of "debt collector" a creditor collecting its own debt, 15 U.S.C. § 1692a(6)(F)(ii), and the exception to that exemption that applies when the creditor collects its own debt by deceptively using the name of a third party. 15 U.S.C. § 1692a(6). He also newly argued that Twin Oaks violated 15 U.S.C. § 1692j, which prohibits a creditor from creating a form that would cause an unsophisticated consumer to believe a third party is collecting a debt, when that is false. The factual support for Mr. Laccinole's new argument is that South County was collecting his monthly membership dues under its operating names, while the processing was done by Twin Oaks; he appears to argue either that this constitutes the collection of his dues by Twin Oaks deceptively using the operating names of South County or the collection of his dues by a creditor (South County) deceptively using the name of another (Twin Oaks).

This simply makes no sense. First, even if otherwise viable, this theory would apply to the action of the creditor, South County, which is not a defendant in this case. Twin Oaks does not rely on the exemption for collection by a creditor in its own name; that exemption is inapplicable to this case in which Twin Oaks, the servicer, not South County, the creditor, is the only defendant. Second, even if South County were a defendant and attempting to rely on this exemption, it did not deceptively "use any name other than its own." Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998) (creditor collecting debt under its own name should use name under which it does business or name it used at inception of credit relationship). Rather, South County procured Mr. Laccinole's authorization to make payments directly to it in its operating names and clearly disclosed that the electronic processing of those payments would be done by a third party. When a problem arose with Mr. Laccinole's credit card, Twin Oaks, as processor, sent him a letter that crisply, clearly and accurately disclosed the roles of both the processor and the creditor: "[Twin Oaks] processes your LUXE FITNESS membership dues." ECF No. 1-3. This communication could not cause confusion, even to the least sophisticated consumer, and certainly would not justify either stripping away the exemption for direct collection by the creditor or give rise to a claim based on 15 U.S.C. § 1692j for creating a form that could cause a consumer to be deceived into believing that a third party is collecting the debt. See Wood v. Capital One Servs., LLC, 718 F. Supp. 2d 286, 291 (N.D.N.Y. 2010) (where complaint failed to allege that creditor was collecting its own debt in name of another, but rather alleged only that debt was being transferred to third party, claim against creditor dismissed).

Finally, I turn to Mr. Laccinole's claim that he is a consumer victim of deceptive and unfair trade practices and entitled to recover under RI-DTPA. This claim is fatally flawed because of the dearth of evidence of two of its essential elements.

First, in conclusory allegations in the Complaint, and motion for summary judgment, Mr. Laccinole purports to seek actual damages for emotional distress, ECF No. 1 ¶¶ 69, 73, 78, 82; ECF No. 7 at 2, but has presented no evidence of emotional injury and has neither pled nor proven any other actual damages. Under questioning by this Court, he was unable to articulate any way in which he had experienced any actual damage of any sort. As a result, his RI-DTPA claim founders on his failure to allege or present competent evidence of "ascertainable losses of money or property, real or personal," which is an essential element of a private right of action under the Act. Barreiro, 2009 WL 982412, at *2-3 (despite proof of deceptive conduct under FDCPA, RI-DTPA claim dismissed because plaintiff failed to allege ascertainable loss of money or property, which is predicate element of private right of action); cf. Kassner, 2012 WL 260392, at *9-10 (even if violation deemed *per se* deceptive under Massachusetts law, plaintiff seeking remedy under Mass. Gen. Laws ch. 93A, § 9 must demonstrate actual loss). His RI-DTPA claim also fails because Mr. Laccinole has utterly failed to present a scintilla of competent evidence of unfair or deceptive practices. In light of Mr. Laccinole's *pro se* status, at the hearing, I explored whether he could articulate some way that he was actually deceived, but he could not. Without some evidence to establish the elements either of deception or ascertainable loss of money or property, Mr. Laccinole's claims under RI-DTPA fail as a matter of law.[14]

I pause for an important coda. The text and legislative history of FDCPA emphasize the intent of Congress to address the previously severe problem of abusive debt collection tactics used against unsophisticated consumers. 15 U.S.C. § 1692, *et seq.*; S. Rep. No. 95-382, at 4

---

[14] Based on this conclusion, I do not reach the parties' dispute over the applicability of the RI-DTPA exemption for actions regulated by the Rhode Island Department of Business Regulation, except to note that Twin Oaks, as a non-debt collector, was not subject to the registration requirement and therefore presumably not subject to regulation. Accordingly, if it had engaged in deceptive conduct that caused Mr. Laccinole to suffer ascertainable losses, RI-DTPA should permit him to bring a claim.

(1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1698.  The private right of action is a critical tool

to the achievement of that goal.  Jacobson, 516 F.3d at 90.  Nevertheless, "FDCPA does not aid

plaintiffs whose claims are based on 'bizarre or idiosyncratic interpretations of collection

notices.'"  Id.; see Carroll v. Wolpoff & Abramson, 53 F.3d 626, 630 (4th Cir. 1995) (proper to

limit fee award to successful FDCPA plaintiff, citing danger of "over-encourag[ing] litigation

alleging technical violations of this and other statutes aimed principally at collecting attorney's

fees").  As another court has noted, the Act was not intended to enable plaintiffs to bring serial

lawsuits against different debt collector defendants alleging various and often insignificant – in

this case nonexistent – deviations from the Act's requirements.  Ehrich v. Credit Protection

Ass'n, L.P., 891 F. Supp. 2d 414, 416 (E.D.N.Y. 2012).  Similar to the plaintiff in Ehrich, Mr.

Laccinole has filed six FDCPA complaints in this Court, including this one.[15]  See id. at 415.  In

this latest case, Mr. Laccinole's revolving legal theory, including the latest version that he will

assert if allowed to amend, is grounded in a claim utterly lacking in substance because there are

no technical or substantive violations of FDCPA or RI-FDCPA in any Twin Oaks conduct that

has been brought to the attention of this Court.  Mindful that Mr. Laccinole is pro se, I

nevertheless specifically recommend that he not be afforded an opportunity to amend his

Complaint because such a step would be fruitless.  Brown v. Rhode Island, No. 12-1403, 2013

WL 646489, at *1, 3 (1st Cir. Feb. 22, 2013) (per curiam); Kennedy, 2010 WL 445735, at *4-5

---

[15] Mr. Laccinole has filed five prior cases in this District, all of which were dismissed prior to the filing of an answer.  See Laccinole v. PFS III, LLC, C.A. No. 13-434S (D.R.I. June 11, 2013) (complaint alleges violations of FDCPA, RI-FDCPA, RI-DTPA and TCPA; dismissed prior to answer); Laccinole v. United Recovery Sys., LP, C.A. No. 13-291S (D.R.I. Apr. 30, 2013) (complaint alleges violations of FDCPA, RI-FDCPA, RI-DTPA, FCRA and Texas state law claims; dismissed prior to answer); Laccinole v. Prof'l Account Mgmt., LLC, C.A. No. 13-86S (D.R.I. Feb. 4, 2013) (complaint alleges violations of FDCPA and RI-DTPA; dismissed prior to answer); Laccinole v. MB ROI, C.A. No. 12-516L (D.R.I. Jul. 12, 2012) (complaint alleges violations of FDCPA and RI-DTPA; dismissed prior to answer); Laccinole v. Healthcare Revenue Recovery Grp., LLC, C.A. No. 12-283S (D.R.I. Apr. 13, 2012) (complaint alleges violations of FDCPA and RI-DTPA; dismissed prior to answer).

(where *pro se* plaintiff has already advanced additional allegations he would include in motion to amend, and court addressed them on the merits, amendment would be futile and complaint should be dismissed without leave to amend).

IV.    **CONCLUSION**

Based on the foregoing, I recommend as follows:

- That Plaintiff's Motion to Strike Affidavits and Exhibits (ECF No. 23) be denied;

- That Plaintiff's Verified Motion for Summary Judgment (ECF No. 7) be denied;

- That Defendant's Motion for Judgment on the Pleadings and to Dismiss (ECF No. 16) be converted pursuant to Fed. R. Civ. P. 12(d) to a Motion for Summary Judgment, which should be granted, disposing of the Complaint in its entirety without leave to amend.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its service.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
May 1, 2014